Rebuttal, we'll call our next case, Bistrian v. Warden Troy Levi. Mr. Scott? Yes, Your Honor. You may proceed. Thank you, Your Honor. Jeffrey Scott, on Your Honor, you had issued, the Court had issued a letter on August 22nd of this year asking us to address issues involving whether or not there was a Bivens cause of action in this context under the First Amendment, and whether or not there was a Bivens cause of action under the Fifth Amendment, punitive detention, and failure to protect in this context of the case, and also asked a question about jurisdiction. I wanted to, of course, remind the Court the Abassi decision and the Vanderklak decision control this Court's decision, and to remind the Court that even a modest extension is a new context in terms of Bivens. Since Abassi has come down, Abassi was clear that in a situation where there's overall arching sovereign immunity and then claims against federal officials, that Congress would be in the best position to legislate whether or not. True enough. That was said. Why don't you go straight to the jurisdictional point, okay? This thing was litigated for 10 years, and nobody said boo about, hey, there's not a Bivens. So how do you get around that? All right, Your Honor. So with regard to, well, jurisdiction rests first with the jurisdiction. In the district court, we, the district court had an alternate procedure under Rule 56. And in that procedure, the court asked the defendant to brief the issues that it's going to present to the court on summary judgment. And it's not a brief. It's basically an outline. So in that circumstance, the defendants, all the defendants briefed the, put the plaintiff on notice that it was challenging the First Amendment claim in its original submission. And it says that Bivens is not actionable under the First Amendment. It is. Where was that? This is in the appendix. This would be a JA 3898. Yes. And that was only as to the First Amendment. That was only as to the First Amendment. And was that developed in any way in argument in later briefing and discussion before the district court? Your Honor, I just wanted to correct. It was JA 3852. 3852. Yes. The other site was the plaintiff's response to summary judgment. So because of the alternate procedures that were employed, the plaintiff in this circumstance actually did not respond to that question as to whether or not Bivens was extended. So the defendants did not brief that issue. However, regrettably, it also did not raise the issue of whether or not Bivens was available under the Fifth Amendment. Because we believe that it's a threshold question, not whether or not there's a claim, but because it's whether or not there's a cause of action and a legal question, this court, if it decides that there could have been waiver of this issue, can still hear the issue of Bivens because it involves the totality of this case and the context of both the Fifth Amendment and the Fifth Amendment claims. That was said in Vanderhoff, that in order to determine what's clearly established, we have to find out what really is a cause of action. Yes, Your Honor. So with that, that's why we believe that even if this court considers it a waiver, this court should still take the jurisdiction of that issue up in order to reach the remaining issues in the case. So since Abbasi, there's only been two circumstances, sorry, since Bivens, there's only been two circumstances where Bivens has had an implied cause of action by the Supreme Court allowed. And that would be in the context of a Fifth Amendment gender discrimination case, which is clearly not this case. And the second one was a prison case involving an Eighth Amendment claim of denial of medical care. The first time that this case came up to the Third Circuit, we talked about that, the fact that a detainee, it doesn't have an Eighth Amendment claim, but it has a failure to protect claim. Do you see a distinction between the failure to protect claim and the other, the punitive detention and the retaliatory detention claim in terms of the constitutional significance? I think there's a difference, Your Honor, in terms of the context, not so much the difference in the constitutional claim. For example, in Farmer v. Brennan, the Supreme Court seemed to have implied a cause of action and then went and started to talk about a failure to protect claim, what would be the culpability level of an official. Indeed. So why doesn't Farmer v. Brennan say there is a Fifth Amendment, there is a Bivens action under the Fifth Amendment for failure to protect? Because that's what the next step would be to determine whether or not the application of a bossy would then allow Bivens remedy to go forward. Let's do that then. Let's look, and here you have a failure to protect claim. What are your alternate remedies? That's what, obviously, it's a new use. So what are the alternative remedies here? For failure to protect claim once he's been beaten up, you know, there's no habeas, there's no injunction. You know, his claim for damage is kind of like the medical care situation. Wouldn't that be a pretty strong case for extending Carlson to, you know, not just failure of medical treatment, but failure to protect when there's a constitutional right to be protected? Your Honor, with regard to the Carlson case, even a bossy suggested that, in its opinion, that had it had Carlson in front of it today, it may have had a different outcome. Yeah, it may have, but you don't even have to talk about extending Carlson, because you've got Farmer v. Brennan on the books, and it is an inmate-on-inmate violence case, and they treat it, it's a Bivens claim, and they analyze it. So the fact that a bossy comes later, I mean, we've got this important principle, and the Supreme Court has emphasized it, and so have we, that we're not in the business here in the Courts of Appeals of deciding that the Supreme Court has implicitly overruled its previous cases. You know, in Agostini v. Felton, the Supreme Court was pretty clear about that. Don't you be assuming that. You let us take care of that, is what the Court tells us. So we've got Farmer v. Brennan on the books, and we're not to assume that a bossy, without any mention at all, sub silencio, overruled Farmer v. Brennan. Why aren't we dealing with the straight-up Bivens claim, inmate-on-inmate violence, determined by the Supreme Court to have legs in Farmer v. Brennan. I suggest, Your Honor, that what we have to do is take a step back and look at the context of Mr. Bistrian's claim. Mr. Bistrian was in the shoe. He was lawfully in the shoe, and I think the District Court determined that during this period of time. Mr. Bistrian, with regard to the failure-to-protect claim, he was... Yeah, keep those separate. I'm not talking about the retaliatory... I'm putting that aside. The First Amendment and the punitive detention, I'd like to talk separately. So the Fifth Amendment, the failure-to-protect claim. So Mr. Bistrian's, in this circumstance, he was no passing. He informed the correctional officers. We know that. And actually, on the previous appeal, it was decided that they would set forth the failure-to-protect claim. So the only thing new is the Bivens aspect of it. Well, what's different than a straight failure-to-protect claim in this case is that the context of it was he's acting as a confidential informant. That's never been decided in a failure-to-protect. We've got to get to that level of granularity, that even though we've got Farmer v. Brennan saying you can have a Bivens claim for a failure to protect an inmate from inmate-on-inmate violence, that any factual nuance at all on that constitutes an extension, and therefore you have to decide whether or not Bivens will go to that. Because in this case, the guy was a confidential informant. In that other case, you know, he just happened to be a transvestite getting beat up in the yard. But in this case, he's getting beat up for a different reason. So the reason you're getting beat up makes the difference in whether you got a Bivens claim. I'm not suggesting that. What I'm suggesting is that just like there's a cause of action under the First Amendment for retaliation under 1983, and there may not be a cause of action under Bivens for the very reason of the context. So just because there's a claim that could be made under a certain amendment, it doesn't mean it necessarily follows that it would be allowed to be an implied remedy for damages under Bivens, because you have to look at the special factors. And one of the special factors is, is there an alternative remedy? Why wouldn't Farmer v. Brennan, I'm just curious, why doesn't Farmer v. Brennan just settle the matter as to the favor to protect? If the Supreme Court had one of these, it treated it as a Bivens claim, and it analyzed it, and it never said, wait a second, this isn't really a Bivens claim. It said, no, this is a Bivens claim, and there's a cause of action here, and it analyzed the claim. Why didn't that game up on that particular one? I believe that Abbasi teaches us going forward that we still have to apply whether or not there's special factors, which include are there alternative remedies? That's if there's a new extension, right? That's right. If you reached, if you reached that there is, if this is a new context, whether or not- We'll go to that next step. But if we say it's not a new context, we don't go to that next step. You don't, Your Honor. And then the court would have to decide that this is not a new context. And however, the court, if it did decide this was a new context, because it's never been decided by the Supreme Court before, then the court would then look to whether or not there's special factors, which would include- You say never been decided by the court before. You mean new context because it's a confidential form? No, because, because of the, because it's never been decided in a case of a Fifth Amendment pretrial detainee that a failure to protect claim would apply. So you're making, you're hanging the difference on the Fifth, the Fifth Amendment as opposed to the Eighth Amendment? Your Honor, if this was a 1983 case, I would suggest that that would be a different circumstance because Congress had already enacted a statute that allows redress, 1983. But because Congress has not provided for a remedy, a statutory remedy, Abbasi suggests that this court should look as to whether or not there's an alternative remedy involved. And the Tort Claims Act, in this circumstance, has an alternative remedy for Mr. Bisbee. It only gets better if it's a new context, right? And your argument for it being a new context is it's the Fifth Amendment, not the Eighth Amendment. Or am I missing it? It's actually, it's never been decided before, after Abbasi. But didn't we say? Your Honor, I agree with you. There's no question I started this, that Farmer v. Brennan sets the standard for what the standard of conduct is. The question is, is there an implied right under Bivens? And is there an implied right under Bivens seems to have been answered by Farmer v. Brennan because Farmer was a Bivens case, right? It was a Bivens case. The court implied the cause of action, just like it would apply, remember the city, the constitutional violation. And then it went to examine municipal liability. So there are times when the court will, for benefit of legal analysis, say there is an implied right. Let's look at what the standard would be. Sure. And in those cases, typically they say, let's assume there's a right. And they're saying it because they're about to say, even if there were a right, you lose. But in Farmer, it wasn't an even if you have a right, you lose. And it wasn't a let's assume there's a right. They addressed the right. They analyzed the right. They accepted the existence of the right under Bivens, right? They did. We got that case. The Supreme Court did. Yeah, okay. Let me ask you a question. Let me get to the special factor. Yes. We've got a very different situation here from Abbasi and Vanderklag. We have a prison. We have no national security. We have no terrorism. We have no international implications. We have nothing that signals hands off, let Congress decide in this huge situation. How do you say there's any special factors here that would militate against implying Bivens? I would say the special factors have two sets here, Your Honor. You have the special factors, one is their alternative remedy special factor two. Is there something that goes on inside the prison that would require the judiciary not to interfere? And usually in a case involving a prisoner who's in shoe, where he's located, and how he's treated in terms of conditions of confinement, courts will stay away from that. So the special factor for that is the day-to-day operations of the facility is usually left for the warden and his executive staff versus judiciary. So there is a special factor involved there with regard to prison operations. Well, the citations of Turner be sadly, but that had to do with the ability of prisons to impose regulations. And that seems a little bit different from, do we deny someone a cause of action when they've been harmed at the hands of prison guards? Do we just say because there is some deference that we give that it's just off base that you would ever impose liability? Your Honor, and in this case, and you know the facts well, Mr. Bistrian was removed from the orderly position when he said he was threatened. He was placed in his cell and for a four week period of time went by and there was no physical contact at all with his assailant. And so that's the kind of day-to-day operations. You would be extending the case that you would be saying, hey, he should have been moved out of that facility. That's a special factor. So if the court intervenes in this context, in this context, you're going to be basically stepping in for the warden to say you shouldn't have kept him in that shoe. You should have transferred him to another facility. So that is an important special factor. Does it rise to national security? No. Does it rise to airport security? No. But it is a special factor with regard to the BOP policies of where prisoners should be housed and how they're housed. I know I'm out of time. I know we're out of time, but if my colleagues will allow me to impose an amendment on you just for a moment longer. To the First Amendment claim. Yes. People were discussing in their briefing, at least not that I saw, the LaPrade case or the Milhouse case or the Mack case. Mack was brought to our attention just yesterday. In those cases, particularly the Prade and Milhouse, we said, I mean the Supreme Court had never said it, but we said, yeah, you can apply Bivens cause of action from the First Amendment. Milhouse is in the prison setting. What are we to do with our own precedent there? When you say there's no Bivens cause of action here, what do we do with Milhouse? The First Amendment claim, in this case, didn't arise in the prison setting. It arose during Mr. Bistrian's sentencing before the district, before his sentencing judge, in this case, Judge Du Bois. Mr. Bistrian was trying to seek a downward departure from his sentence based on his cooperation inside the FDC in Philadelphia. It was at that point the U.S. Attorney made an argument that Mr. Bistrian was not such a model prisoner. It was at that time the defense counsel demanded the information. And it was at that time the judge ordered the government to turn over the information. And it was at that time, within the context of the... So that's not the prison setting? I mean, is the prison folks coming forward? I mean, his assertion is, they were retaliating against me because of what was happening in the prison. They were retaliating. No, his allegation, I believe, is that he was making a grievance before the court, and I want my sentence downward departure. And in turn, the judge ordered the prison and Mr. Jezart to produce the information. It turned out that what the U.S. Attorney stated was true. Mr. Bistrian had indeed violated the phone policy once again. Mr. Bistrian is saying he was put again in the shoe as a result of the grievances he made to the sentencing judge? He was put in the shoe. That's his allegation. But he was put in the shoe because of the phone violation. And he was provided with the process... The retaliation claim is based upon that placement in the shoe after the sentencing? Or after the sentencing? Preceding the sentencing? It could be viewed like that. Our view is that the retaliation claim and the punitive detention claim is really one and the same. But for his statement in court, which is not in the context of a prison, he would not have been placed in the shoe. It's a fine line, but it's a separate... But it's the distinction... It is. ...that you would draw a distinguished millhouse. It is. Because it happened inside the courtroom where he was represented by counsel. And the fact is, all the special factors would counsel against extending the Bivens First Amendment claim and the Fifth Amendment claim. Because he was represented by counsel, he could have easily asked for relief from the court. He had the courts here. He could have easily moved for the habeas out of the shoe to a different location. If I can interject, but isn't it true that a millhouse, we relied on LaPrade, and LaPrade would basically said, listen, it's no fair that you can have a 1983 claim against a state official, but you can't have against a federal official. It's true. That basically equated the same, which post-Abbasi, we know we can't really do. Isn't that really what happened there? I'm sorry. It's not really much unlike Vanderklok, where in a 1983 claim, Mr. Vanderklok may have actually had a 1983 First Amendment retaliation, but because of the Bivens issue and because of the standard that needs to be followed, the fact remains he had alternative remedies. And it was counsel, this court said, even if Mr. Vanderklok doesn't have a claim under the First Amendment based upon previous precedent, he doesn't have one because of Abbasi. So I would suggest that all the implied causes of action that this court has found, I think the court has to step back from that in a Bivens context and first answer the question, is this a new context? If it is, then apply the Abbasi factors. So I think that's what the issue here is for the court, is this court to decide if it's a new context. If it's not, then as Judge Jordan discussed, we don't need to get to the special factors. Thank you very much. Good morning. I'm Richard Bazelon. I represent the appellee, Peter Distria. I'm going to, if it's acceptable to the court, jump in, so to speak, where Mr. Scott and the court left off, talking about the First Amendment retaliation claim. And I want to really hark to what Your Honors raised with respect to the Third Circuit precedent with respect to retaliation. As you pointed out, there are at least three or four precedents of this court which have upheld a Bivens remedy in a retaliation claim. And as you pointed out, Milhouse... Milhouse was a denial of access to the courts. Is that not a distinction with a real difference when the question is internal, not access to the courts, but internal operation of the prison? That is, where a prisoner will be housed, what sort of restrictions the prisoner will be under. No, Your Honor, it's not. And here's the reason. Mr. Distria was being penalized or was being punished because he had sought access to the courts. In other words, he had come up for sentencing. And at that time... Maybe I misunderstood. Hold on. I understand the facts. Okay. But maybe I misunderstood the claim. I didn't understand the claim to be, hey, I've been denied access to the courts. I understand the claim to be, I have a First Amendment retaliation claim and a Fifth Amendment retaliation claim, in essence, because they've made me go in the shoe. They kept putting me back in the shoe because they didn't like what I was doing. Now, that's different from an access to the courts case, isn't it? No, I don't think so, Your Honor, because what we're contending is that because Mr. Distria threw counsel at a sentencing hearing, his lawyers advised the court of what his circumstances were and what had happened to him at the Federal Detention Center. He was being punished for that. Sure. Is there any place in the complaint where it says, and I have been denied access to the court? No, but... Because the claim is not I've been denied access to the court. It's I keep getting put back in the shoe. No, Your Honor, with all due respect, the claim is I'm being punished because I had access to the court. And what I'm supposed to now understand is that if I complain about anything in court having to do with the conditions of my confinement, I'm going to be punished. And what this court said in the first Distria case was, that's the retaliation. That that is an actual, you know, heavy penalty imposed on access to the court on a First Amendment right. That being going into the shoe. Well, the penalty is, that's right, he's being punished for exercising his First Amendment right. That's correct. And in response, and very egregiously, because what happened is that then at the same time, there's a complaint made by a prison official having to do with something that took place months before. It is so minor that when it comes up for hearing, it's not even a slap on the wrist. There is no time imposed for being placed in the shoe as a result of that. And yet he's kept for 84 days. And now, I'm sorry. Let's get back to the analysis here. Is there a First Amendment retaliation claim under can be authority post-Abbasi because they basically reasoned that were there no cause of action for federal infringement of First Amendment rights, an aggrieved individual could seek damages but not federal, against state officials, but not federal. There's no reason to allow federal officials to act with impunity in this context and to bar state officials. Thus, we believe there's a Bivens Act, equating it to 1983. Well, now, post-Abbasi, we know that's not the way we're supposed to reason whether there is a Bivens cause of action. So, our precedent is basically not in line with what the Supreme Court has said. So, we need to reason anew and we get into whether it's a new context, and it is, from a First Amendment standpoint, whether there are alternate remedies and there is habeas. If he's being detained in retaliation, there would be a habeas claim. There would be injunctive relief. And we're in the prison setting. We're in the special factors setting. Isn't that really where we need to be from an analytic standpoint? Well, first of all, let me pick up several things you said. The first point you made about whether there's a retaliation claim under Bivens. My response is, it depends. It's very fact-specific. Clearly, there are situations in which there may not be a claim, but there are, I would submit, under the special factors test, there are a number of cases where there would be a Bivens remedy. And I'm going to get to that. But we're here. We have the prison one. We have the prison context. Don't get to it, because Judge Rendell's asking the question that's much on my mind, which is, aren't we just in a posture post-Abbasi where we say, well, we don't have to really distinguish We don't have to distinguish Millas. We don't have to distinguish Mack. Because after Abbasi, those bets are off. We just have to do what we're told in Abbasi and ask if this is a new context and then ask about special factors. Is that the analytical approach that Abbasi requires us to take? I would say two things, Your Honor. I think the point that you made in questioning Mr. Scott is a And one of it is that if you look under the special factors of Abbasi, one of them is, has there been precedent, has there been guidance given to prison officials as to the fact that certain conduct will violate federal standards? And in this circuit, Carlson and Mack give guidance on that subject. So I think that the precedent is relevant for that reason. But to get to your underlying question Can we start with the question of with new situation, new circumstance? Right. I agree. And under the special factors test, I submit to the court that there are no special factors which caution against recognizing a Bivens claim in a situation in which a prisoner is seeking access to the court. I'm happy to hear about that, but I'm having trouble. Let's start at step one. Do you agree that the first step we have to take is to ask is this a new context? Before we get to special factors. Right. You only get to special factors if it's a new context. If it's a new context. Do you agree or disagree with the premise that after Abbasi, our previous cases don't have the kind of weight and binding effect they have on us, so we really are dealing with a new context? Or do you have a different view on that? No, I accept that, Your Honor. Okay. I think the cases are relevant, but you do need to analyze it under special factors. Okay. So then we're past step one. We know we're in a new circumstance when it comes to First Amendment, at least, and we're asking special factors. Okay. Thanks. Now you were telling us about the special factors. And in terms of the special factors, there are no policy issues that involve the question of whether a prisoner has a right to But there are policies with respect to detention. I mean, this is in the wheelhouse of the prison, as to when to confine them, as to where they should be detained. Are we going to say, as compared to Congress saying, this is something that courts should get involved in and should second permit prisoners to complain about their confinement, and this should be a federal cause of action against individual liability for the warden who says you're going to solitary? The essence here, Judge, is that the prisoner is complaining that he's thrown into solitary because he makes access to the courts. Okay, but it's all about confinement. And that's not a policy issue. But it's all about a prison warden or a prison official determining a confinement issue. It's all about a prison warden saying, if you're going to make a statement to the court that we believe doesn't reflect well in our prison, we're going to throw you in solitary confinement. And I submit that there is no policy behind that. It's not the subject of policy. It's not a policymaker. But, Vanderklok, they were not all about policy. They were also about controlling an individual's decision-making and making them responsible for individual damages in a setting where perhaps the balance should be struck by Congress, not us. Vanderklok, I would respectfully submit, is an entirely different case. We're talking about security screening officials, TSA people who a regime set up in response to the 9-11 attacks, and legislation suggesting that that was a separate area. It was not a prison case. And this court was very careful in Vanderklok to make a narrow holding and to say it was very fact-specific. This is the guts of what the federal courts have stood behind for, you know, for many decades, namely access to the court. Although in Abbasi, the court specifically looked at the fact the PLRA had been passed, and there was no reference to, you know, enlarging Bivens. It was about remedies. It was about what prisoners can go through. And in Abbasi, the Supreme Court took that to mean that Congress is not saying we should have more Bivens cases. Your Honor, let me respond. What the Supreme Court said in Abbasi was you could possibly make the argument that when Congress amended the Prison Litigation Reform Act, they could have provided an additional remedy. There was no statement that that is an additional remedy. And actually, in the ACLU, in their amicus brief, does an excellent job of addressing that and pointing out that it's totally, it's really illogical because the whole point of the Prison Reform Litigation Act is to say, if you have grieved, that's the first step to asserting a Bivens remedy. And we have also a point that was made by the court with respect to not overruling other Supreme Court cases. Carlson held that the Federal Tort Claims Act is not an alternative remedy, that the Federal Tort Claims Act is complementary. Leaving the Federal Tort Claims Act aside, just take Mr. Scott's assertion head on, and I think this is part of the questions you've been getting is, is there not a separation of powers issue at a high moment in the prison setting? I mean, when you say this isn't national security like airport screening, absolutely true. This is not that. But isn't it a highly salient factor that in many cases, Supreme Court cases, in our cases, we've gone out of our way to say, well, that is a question of administration within the prison, and we're not touching that. We're, you know, unless something rises to the level of an Eighth Amendment cruel and unusual punishment problem, you know, we've been pretty clear, and I think the Supreme Court has too, about hands off, because that is quintessentially an executive branch function to deal with questions of restrictions and conditions of confinement for federal prisoners. Is that not, in fact, the case? Your Honor, I think that a lot of the laws come under the Eighth Amendment, and as you pointed out, there's no difference between that and the Fifth Amendment. If you're talking about a federal prisoner, and Fuentes dealt with that, and this Court dealt with it in the first, you know, opinion in this case. But I would say, Your Honor, when you're talking about a situation in which you have a mentally ill inmate, and the record is clear about this. Remember what happened to Bistrin here. He gets tossed in the shoe. Immediately, his lawyers say, this man is mentally ill. He's suffering. They had submitted at that point a letter from Dr. Samuels. Nothing happens. They then raise the issue with the Court. And by the way, Judge, I don't think it's so clear there's a habeas remedy here, but that's another subject that hasn't been raised. But in any event, they raise it with the Court, and as a result of that, a psychiatrist, a very eminent psychiatrist, is appointed. He goes and visits Mr. Bistrin in the shoe, and he writes a report, and he says, this man is really suffering. He has post-traumatic stress disorder. He was attacked twice. He's already spent 400 days plus in the shoe. He is in bad shape. And then they release him. And that's after 84 days. If it had been for that, who knows how much longer he would have been kept. I mean, this is an extreme case under the kind of cases that you're analogizing that federal courts have become involved in. And when you couple that with the First Amendment, that is the retaliation. As compared to having an individual on the hook for damages for making a decision. Well, I don't think there is no argument here that has been made by the appellants that there was an injunctive remedy that could have been afforded to Mr. Bistrin. And I don't know of any. Could I have a moment to address the jurisdictional and the waiver issues? Sure. I'll give you a couple minutes. Thank you, Judge. So with respect to waiver, I just want to really highlight, Your Honor, what we have here, as you pointed out, there's a 10-year history. That's true. It's a 10-year history. But if it's, in fact, the case that there's no cause of action, assume for the sake of discussion that we were to say, you know what, there's not a business cause of action here. What earthly sense would it make to say, yeah, but that's waived. Go ahead. Take this through trial. And then when you come back up on appeal again, we'll tell you there's no cause of action here. Because, Your Honor, with all due respect, if it's waived, it's waived. It's not going to waive or create a cause of action, right? You can waive all kinds of things, but you can't waive into existence something that never existed to start with, can you? Your Honor, let's just take an example. If the issue here were waiver of qualified immunity, and there is obviously a connection between qualified immunity and Bivens, if you waive qualified immunity and you couldn't at the end of the day. . . It's not a cause of action, right? That's why in Vanderklok we said this is a threshold issue. You've got to answer the question. Even if nobody thought to ask it before we said in Vanderklok, you've got to answer the question whether there's any cause of action to begin with. How is this any different in this setting than it was in Vanderklok? Because, Your Honor, this is the kind of issue which the courts have pointed out, and this Court has recognized in Vanderklok, it is a very fact-specific, very case-specific, policy-oriented kind of situation and decision. And if the defendants do not raise it, then basically it is the equivalent of an admission that the case can go forward without being. . . Your Honor, just look what's happened in this case. Yeah, I think I got your argument on that. I'm having a hard time understanding how it's different from Vanderklok. I mean, there's nothing case-specific about the question. Either there is a Bivens. . . Either the Bivens cause of action, its existence, is a threshold question or it isn't. And the fact that it's a threshold question in Vanderklok seems to me to say it's a threshold question always. It's always a question whether you've got a cause of action at all. And a policy has forced the issue as a matter of law, really, that it needs to be determined. Well, let me respond about Vanderklok, Your Honor, and that is that Vanderklok did not involve any waiver issue. I mean, that. . . and indeed, in Vanderklok, there were two claims that were before the Court. Well. . . I know. I'm speaking to the choir here, but the point I'm making is that the second claim the Court did not rule on because the Court found that it hadn't been raised below. And that included a Bivens claim. Okay. Well, we said we'd give you a couple minutes. Why don't you talk to us about the jurisdictional point? There. . . do you mean whether the Court has jurisdiction? Yeah. You said you want to talk about jurisdiction and waiver. So there's waiver. . . Same. Is that one and the same, or is there a separate point you wanted to make? My point with respect to jurisdiction is that this Court clearly has jurisdiction to determine that there's waiver. This is. . . and it's not a question of this Court not having jurisdiction in order to. . . jurisdiction to determine that there is a waiver. This is not a case in which there is no jurisdiction. The jurisdiction of the Court arises because this claim is under the Constitution. And indeed, all the courts that have ruled on whether there's a Bivens remedy, the promise for that is that there's jurisdiction. If there was no jurisdiction, the courts would say, we can't even get to the question of whether there's a Bivens remedy because there's no jurisdiction. And because there is jurisdiction, there is also the ability to rule on the waiver question. And I would. . . the last point I would like to make on waiver, if you allow me, is that if there is not a waiver in this case. . . I mean, in terms of the precedent for the administration of justice in this Court and in the circuit, to withhold. . . I mean, it's clear that the appellants knew that they had a Bivens remedy. And to intentionally withhold it. . . There's no question, Mr. Bazelon, that you would be entitled to enormous frustration But that really doesn't get to the main point we've got to deal with, which is no matter how frustrating it is, if there's no cause of action, there's no cause of action. Now, that's something we're going to have to deal with, but I'll repeat. Maybe my colleagues will help me see the light, but it's hard for me to understand how you can waive into existence something that does not exist. And that seems to me to be the question we have to answer, does it exist. But we'll get to that. Thank you very much for your. . . Thank you, Your Honor. It's been helpful. I appreciate it. Mr. Scott, do you want your rebuttal? I do not have a rebuttal. All right. Again, thank you very much. We appreciate counsel's help today. We've got the matter under advisement and we'll recess for it. Thank you.